UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

‗‗‗‗‗‗

RONALD LEE GARDNER, # 797891,

                Petitioner,                  Case No. 1:13-cv-692

v.                                           Honorable Paul L. Maloney

CARMEN PALMER,

                Respondent.

_____/

## MEMORANDUM OPINION

      This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. On February 16, 2011, following a bench trial, Muskegon County Circuit Court Judge William Marietti found petitioner guilty of two counts of first-degree criminal sexual conduct (victim less than 13 years old), Mich. Comp. Laws § 750.520b(1)(a). On March 15, 2011, Judge Marietti sentenced petitioner to concurrent sentences of 25 to 38 years' imprisonment on these convictions.

      After unsuccessful attempts to overturn his conviction in state court, petitioner filed this habeas corpus petition. Petitioner seeks federal habeas corpus relief on the following ground:

> IT WAS ERROR FOR THE TRIAL COURT TO RULE THAT PETITIONER WAS NOT IN CUSTODY AND TO DENY PETITIONER'S MOTION TO SUPPRESS PETITIONER'S STATEMENTS MADE TO A DETECTIVE WHILE BEING INTERVIEWED IN A POLICE CAR, PETITIONER NOT HAVING THE OPPORTUNITY TO LEAVE, CONTACT AN ATTORNEY, OR GIVEN *MIRANDA* RIGHTS, WHERE THE DETECTIVE KNEW BY PREVIOUS TELEPHONE COMMUNICATION AND PETITIONER'S CUSTODIAL STATEMENTS

THAT PETITIONER WANTED TO CONTACT AN ATTORNEY
BEFORE BEING QUESTIONED ABOUT THE SEXUAL ABUSE
ALLEGATIONS, AND THEREBY DENIED PETITIONER HIS RIGHT
TO COUNSEL UNDER THE UNITED STATES [] CONSTITUTION.[1]

(Petition at 5-6, ECF No. 1, PageID.5-6; Petitioner's Brief at 2, ECF No. 2, PageID.20).

Respondent has filed an answer to the petition. (Answer, ECF No. 10).
Respondent argues that the petition should be denied for lack of merit. (*See id.* at 32-49,
PageID.107-24). For the reasons set forth herein, the petition will be denied for lack of
merit.

## Standard of Review

The Court's review of this petition is governed by the provisions of the
Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214
(AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly
deferential standard for evaluating state-court rulings which demands the state court
decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005)
(citations omitted). "AEDPA requires heightened respect for state court factual and
legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).
"State-court factual findings [] are presumed correct; the petitioner has the burden of
rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct.

---

[1]The extraordinary remedy of habeas corpus lies only for a violation of the
Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *see Estelle v.
McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner's reference to the Michigan
constitution has been disregarded because it cannot provide a basis for granting
federal habeas corpus relief.

-2-

2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132  S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and

-4-

"[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013)

## **Findings of Fact**

On December 22, 2010, and  January 21, 2011, Judge Marietti conducted a hearing on petitioner's motion to suppress. (Hearing Transcripts (HT1 and HT2), ECF No. 18, 19). The pivotal question was whether petitioner was in custody on February 12, 2010, when he made his incriminating statements to Detective Paul Schultz. On the first day of the hearing, Judge Marietti heard testimony from Detective Paul Schultz (HT1, 7-49, 93-104), petitioner's wife (*Id.* at 50-67), and petitioner (*Id.* at 67-93). He also listened to the recorded statements (*Id.* at 104). On the second day of the hearing, Judge Marietti heard testimony from Lieutenant James Christiansen (HT2, 3-15) and the

attorneys' arguments.  (*Id.* at 16-23).

Judge Marietti denied the motion to suppress.  He held that, under the totality of the circumstances, petitioner was not in custody when he made his statements.  (*Id.* at 23-28).  Among other things, Judge Marietti noted that petitioner arrived at the house of his own free will.  Police did not go get him.  Petitioner was not ordered into the police cruiser.  It was "absolutely clear" that petitioner was told that he was not under arrest and that he was free to leave.[2]  (*Id.* at 26-27).  He was not in handcuffs and was not taken to the police station for questioning.  (*Id.* at 27).  "The officers made every effort to create the least coercive environment they could by Officer Christiansen removing himself from the immediate vicinity of the defendant so there was one officer there [with petitioner] sitting in the cruiser at the officer's invitation, not order. . . .And based on the totality of the circumstances here, the Court is satisfied that this was not a custodial interrogation and therefore the motion is denied." (*Id.* at 28).

On February 11, 2011, petitioner waived his right to a jury trial.  (ECF No. 20).  During the February 15 and 16 bench trial, Judge Marietti heard testimony from the victim (TT I, 17-66) as well as other witnesses.  Melissa Peterson,  a therapist and

---

[2] Judge Marietti recognized that it was not necessary reach the issue of whether petitioner had made an unequivocal  request for counsel.  "There is no consequence for the defendant's request for a lawyer if there is no custody.  The [F]ifth [A]mendment attaches when there's custody.  The [S]ixth [A]mendment right actually doesn't attach until there's actually formal proceedings.  So clearly no formal proceedings initiated before the statements were made.  So the real issue before the court is the question of custody."  (HT2, 24).

medical coordinator at the Child Abuse Council of Muskegon County, testified regarding her encounters with the victim and the information provided.  (TT I, 67-98).

Detective Schultz testified regarding his contact with petitioner on February 12, 2010.   Judge Marietti overruled defense counsel's objection and considered the recording of the detective's interview of petitioner.  (*Id.* at 102-03).

Following the close of proofs, the attorneys delivered their closing arguments. (TT II, 20-34).  On February 16, 2011, Judge Marietti found petitioner guilty of counts I and II and not guilty on Count III.  (*Id.* at 35-40).  He found that the victim's testimony was credible and the evidence showed beyond a reasonable doubt that petitioner "was in fact guilty of penetrating her mouth on at least two occasions when she was under 13 with his penis[.]"  (*Id.* at 40).  During his discussion of the recorded statement, Judge Marietti noted the exceptionally non-coercive nature of the interview conducted by Detective Schultz:

> And I want to say, when and if a reviewing court, and whether the Prosecutor appeals this or the defendant appeals this case, whoever, if anybody does.  The Court of Appeals would need to listen to the audio recording of exhibit one.  Because it is, it is one of the most un-intimidating interviews I think I've ever heard.  There isn't anything in Detective Schultz's mannerisms, or voice, or tone, or questioning that suggests any form of intimidation whatsoever.  It's about as relaxed an interview as I, I can ever remember hearing by a police officer of a suspect.  And that gives it some credibility, some more credibility to me.  Because there wasn't, there just wasn't any effort on the part of Detective Schultz based on the tone of his voice, the manner in which he approached Mr. Garner, the nature of his questioning, that in any way was, in any way was coercive or highly suggestive or demanding.  Very reasonable, very well mannered, very restrained approach in this interview from what I can determine.  And it gives it a lot of credibility as far as I'm concerned as a

result of that.

(*Id.* at 38-39).

On March 15, 2011, Judge Marietti sentenced petitioner to concurrent sentences of 25 to 38 years' imprisonment.  (Sentencing Transcript at 9, ECF No. 23; Amended Judgment of Sentence Commitment to Department of Corrections, found in Michigan Court of Appeals record, ECF No. 24).

Petitioner pursued an appeal as of right.  He raised the same issue on direct appeal that he raises in his habeas corpus petition.  (Defendant-Appellant's Brief on Appeal at iv, Statement of Issue Presented, found in Michigan Court of Appeals record, ECF No. 24).  The Michigan Court of Appeals found that the issue raised by petitioner was without merit and it affirmed  petitioner's convictions. (9/20/12 Opinion, ECF No. 24; *People v. Gardner*, No. 305270, 2012 WL 4215906 (Mich. Ct. App. Sept. 20, 2012)).

Petitioner filed an application for leave to appeal to Michigan's highest court. He raised the issue now presented in his habeas petition. (Application for Leave to Appeal, "Statement of Argument Presented," Exhibit A, page 1, found in Michigan Supreme Court record, ECF No. 25).  On March 4, 2013, the Michigan Supreme Court denied review.  (3/4/13 Order, ECF No. 25).

On June 25, 2013, petitioner filed his habeas corpus petition.  (ECF No. 1).

## **Discussion**

Petitioner argues that the trial court committed error in finding that he was not in custody when he made his statement to Detective Schultz, that he should have received *Miranda* warnings, and that he was questioned in violation of his Fifth and Sixth Amendment right to counsel. (Petition at 5-6, ECF No. 1, PageID.5-6; Petitioner's Brief at 3, 13-27, ECF No. 2, PageID.20, 32-46).

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self incrimination, a custodial interrogation must be preceded by warnings of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000).  If an individual is not "in custody," *Miranda* and its progeny do not apply. *Bobby v. Dixon*, 132 S. Ct. 26, 29 (2011).

The test for determining whether an individual is "in custody" for purposes of *Miranda* is objective:

> As used in [] *Miranda* case law, "custody" is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. And in order to determine how a suspect would have gauged his freedom of movement, courts must examine all of the circumstances surrounding the interrogation. Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.

*Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012) (citations and quotations omitted). "Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last.  Not all restraints on freedom of movement amount to custody for purposes of *Miranda*."  *Id.* at 1189.

The Supreme Court has "declined to accord talismanic power to the freedom-of-movement inquiry, and ha[s] instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.  [Supreme Court] cases make clear that the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody."  *Id.* at 1189-90.  Thus, the "temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody."  *Id.* at 1190.  The "custody" determination does not turn on the subjective views of either the interrogating officer or the person being questioned.  *See Stansbury v California*, 511 U.S. 318, 323 (1994); *see also Yarborough v. Alvarado*, 541 U.S. 652, 663, 667-69 (2004).

In *Yarborough*, the Supreme Court emphasized that "the custody test is general." 541 U.S. at 665.  "Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general rule, the more leeway courts have in reaching outcomes on case-by-case determinations."  *Id.* at 664.  It is not enough for a habeas petitioner to point to some factors weighing in favor

of a view that he was in custody. "Differing indications" on custody factors do not undermine a state court's decision, and a habeas court "cannot grant relief under AEDPA by conducting [its] own independent inquiry into whether the state court was correct as a *de novo* matter. A federal court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied the law incorrectly. Relief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable." 541 U.S. at 665 (citations and quotations omitted).

The Michigan Court of Appeals applied the appropriate legal standard, agreed with the trial court's finding that petitioner was not in custody at the time he gave his incriminating statements to Detective Schultz, and rejected petitioner's claims that his constitutional rights had been violated:

> In this case, the trial court considered all the evidence and found that while the testimony of defendant and his wife regarding the detective's actions when defendant tried to leave the police vehicle during the interrogation to move his car weighed in favor of finding that defendant was in custody, the totality of the circumstances supported the conclusion that defendant was not in custody. The trial court focused on the fact that defendant voluntarily went to his home to talk to the police. The trial court further noted that the detective informed defendant that he was not going to arrest him when they spoke on the telephone before defendant returned. Further, the trial court found that defendant got into the police vehicle voluntarily, and at the outset of the interrogation the detective informed defendant that he was not under arrest and was free to leave at any point. Defendant was not handcuffed, and was in the front seat of the vehicle. The interrogation was conducted by only one officer, and it lasted for less than an hour. Accordingly, in light of the totality of the circumstances, we agree with the trial court's finding that defendant was not in custody when he was interrogated by the detective because a reasonable person would believe that he was free to leave under the circumstances of this case. Because we conclude that defendant was not

in custody at the time of the interrogation, defendant was not entitled to *Miranda* warnings, and his Fifth Amendment right to counsel was not violated. *People v. Marsack*, 231 Mich.App 364, 374; 586 NW2d 234 (1998).

*People v. Gardner*, No. 305270, 2012 WL 4215906, at *1-3 (Mich. Ct. App. Sept. 20, 2012).

The decisions of the trial court and the Michigan Court of Appeals finding that, under the totality of circumstances, petitioner was not in custody and that there had been no violation of petitioner's Fifth and Sixth Amendment rights were reasonable.

There was no violation of petitioner's Sixth Amendment right to counsel. The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment's Due Process Clause. *See Gideon v. Wainwright*, 372 U.S. 335 (1963). That right, however, did not apply to petitioner's pre-charge interview. The Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (citations and quotations omitted); *see Michigan v. Harvey*, 494 U.S. 344, 348-49 (1990). Petitioner gave his incriminating statements before adversarial proceedings began. *See United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008); *see also Blythe v. Fatkin*, 64 F. App'x 141, 144 (10th Cir. 2003); *Caldwell v. Warren*, No. 2:10-cv-11930, 2011 WL 379406, at *5 (E.D. Mich. Feb. 3, 2011).

The Fifth Amendment does not contain any provision regarding the right to

-12-

counsel. *See McNeil v. Wisconsin*, 501 U.S. at 176. Nevertheless, the Supreme Court's "jurisprudence relating to the Fifth Amendment guarantee that 'no person . . . shall be compelled in any criminal case to be a witness against himself,'" established "a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present." 501 U.S. at 176 (citing *Miranda*). In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court "established a second layer of prophylaxis for the *Miranda* right to counsel" to "to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *McNeil v. Wisconsin,* 501 U.S. at 176; *Michigan v. Harvey*, 494 U.S. at 350.

Petitioner cannot establish a violation of clearly established Federal law, as determined by the Supreme Court of the United States. He was not in custody when he made his statements. The Supreme Court has "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.' " *Montejo v. Louisiana*, 556 U.S. 778, 796 (2009) (citing *McNeil*, 501 U.S. at 182 n.3); *see Bobby v. Dixon*, 132 S. Ct. at 29; *accord Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir. 2000) ("[I[n order to implicate the *Miranda-Edwards* right to counsel prophylaxis, both a custodial situation and official interrogation are required."); *Schultz v. Howes*, No. 12-cv-10096, 2014 WL 2085194, at *9-11(E.D. Mich. May 17, 2014); *United States v. Conrad*, No. CR13-2039, 2014 WL 712962, at *9-11 (N.D. Iowa Feb. 24, 2014); *Caldwell v. Warren*, 2011 WL 379406, at *5-8.

The petition will be denied.  Petitioner has not shown that the decisions of Michigan's courts rejecting his claims were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.  Consequently, the Court has examined petitioner's claim under the *Slack* standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial

-14-

of habeas corpus relief on the ground raised in his petition is debatable or wrong.  *See*

*Slack*, 529 U.S. at 484.  Accordingly, the  Court will enter an order denying petitioner

a certificate of appealability.

## Conclusion

For the foregoing reasons, the habeas corpus petition be will denied.


Dated:   September 19, 2016            /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       United States District Judge